**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Matthew Treanor,                             )<br>                                                          )<br>                    Plaintiff,                    )<br>                                                          )     Civil Action No. 2:06-2045-CWH<br>                                                          )<br>Charleston Harbor Marina, Inc.,         )<br>                                                          )     **ORDER**<br>                                                          )<br>                    Defendant.                  )<br>_____) | |

The plaintiff Matthew Treanor ("Treanor") has brought this action in admiralty against the defendant, Charleston Harbor Marina, Inc. ("Charleston Harbor Marina"), claiming that the defendant's contaminated fuel caused his vessel, the Squid Row, to sink.

In 2003, Treanor acquired the Squid Row, which is a 1978 or 1979 sixty-foot Jim Smith diesel powered vessel. Treanor spent several months repairing the Squid Row in Florida and Charleston. He replaced two of the vessel's six fuel tanks and made all major repairs. The plaintiff has navigated six other yachts from North Carolina to the Florida Keys, the Bahamas, and the Virgin Islands without boat captains; however, he employed a full time captain, Jay Swain, and a part time mate to run the Squid Row. Treanor operated the Squid Row six times without Swain.

On May 28, 2004, the plaintiff filled the Squid Row with 300-500 gallons of diesel fuel from the Charleston Harbor Marina. On May 30, 2004, around 6:00 a.m., Treanor and six other adults set off on the Squid Row from the Charleston Harbor Marina. Neither Swain nor Treanor's mate accompanied him on May 30, 2004. The Squid Row's engine began skipping

and smoking; the engine failed around 4:30 pm.  Treanor requested help from a tow boat around 5:30 p.m.  The wind was approximately 10-20 knots, and waves were approximately 5-6 feet.  Around 9:00 p.m., the tow boat personnel informed Treanor that the tow boat was unable to assist because of the size of the Squid Row and the weather conditions.  Around 9:30 p.m., Treanor contacted the Coast Guard and requested assistance.  Waves broke over the Squid Row and water entered the vessel.  On May 31, 2004, around 1:45 a.m., the Coast Guard picked up Squid Row passengers in a Zodiac.  The Squid Row sank shortly thereafter.

On July 17, 2006, the plaintiff brought this action in admiralty against the defendant for strict products liability, negligence per se, breach of implied warranty, breach of contract accompanied by a fraudulent act, negligence, negligent misrepresentation, constructive fraud, and unfair trade practices.  The plaintiff claims that the fuel he purchased from the defendant on May 28, 2004, was defective and caused the Squid Row to sink.  On June 15, 2007, the defendant filed a motion for summary judgment.  The defendant claims that the plaintiff cannot show that the fuel he purchased from the defendant was defective because: (1) the defendant has an electric monitoring system in place which has not shown that the fuel was contaminated; (2) no other vessels reported fuel contamination around the time of the incident; (3) the alleged contamination could have come from another source; and (4) the plaintiff's experts fail to establish causation.

Standard For Determining A Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to summary judgment as a matter of law.  Summary judgment is proper only where the moving the party is entitled to judgment as a matter of law, where it is clear what the truth is, and where no genuine issue remains for trial.  Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464 (1962).

I. Electric Monitoring System

The defendant claims that a Veeder Root System monitors the product, quantity, water, and temperature in its fuel tanks and that the system is checked twice daily.  According to the defendant, the Veeder Root System shows that the defendant's fuel tanks had no water in them on May 27, May 31, and June 1, 2004.  The defendant has submitted reports from an independent fuel tank maintenance company which state that the defendant's diesel tank was clean on April 8, 2004, and on May 5, 2004.  However, the defendant has not shown that these tests conclusively show that the fuel was uncontaminated on May 28, 2004.

The plaintiff claims that the Veeder Root System records are missing for May 28, May 29, and May 30, around the time when the plaintiff purchased the allegedly contaminated fuel from the defendant.  In addition, the plaintiff claims that the defendant maintains records from manual fuel quality tests.  The plaintiff has requested that the defendant produce these records, but the defendant has failed to do so.  There is a genuine issue of material fact as to whether the diesel fuel purchased by plaintiff on May 28, 2004 was contaminated.

II.  Other Reports of Contamination

The defendant claims that the plaintiff could not have purchased contaminated diesel fuel on May 28, 2004, because no other vessels reported fuel contamination around this time.  However, the defendant sold contaminated fuel to the Castaway a few weeks before the

incident.[1] In addition, Captain Swain opines that vessels fueling after the Squid Row did not receive significant contamination because the Squid Row removed most of the water and debris in the fuel tank. Swain's theory creates a genuine issue of material fact as to whether the diesel fuel purchased by plaintiff on May 28, 2004 was contaminated.

III. Other Sources of Contamination

The defendant claims that if the Squid Row's fuel was contaminated, the contamination could have come from fill pipes if the filler caps were not tightened properly or from the malicious act of a third party. However, the evidence does not conclusively show that the filler caps were not tightened properly or that any third party placed contaminants into the plaintiff's fuel tanks. Therefore, there is a genuine issue of material fact as to whether the diesel fuel purchased by plaintiff on May 28, 2004 was contaminated.

IV. Plaintiff's Experts

The defendant claims that the plaintiff's experts fail to render opinions with a requisite degree of certainty to establish proximate cause.[2] The plaintiff claims that he observed dirty fuel filters during the incident and that he installed replacement filters brought to him by another ship. The plaintiff claims that he reported fuel problems at the time of the incident to a mechanic, the Coast Guard, and his onboard passengers. Based on the plaintiffs' description of the incident, his experts opine that fuel contaminated with debris caused the Squid Row's engines to fail. The plaintiff's testimony and his experts' opinions create a genuine issue of material fact as to whether the defendant's fuel proximately caused the Squid Row's engines to

---

[1] This instance does not prove that the defendant sold contaminated fuel to the plaintiff.

[2] Neither party has addressed whether expert testimony is required to establish causation.

fail.  *See* Ballou v. Sigma Nu Gen. Fraternity, 352 S.E.2d 488 (S.C. Ct. App. 1986) ("The question of proximate cause is ordinarily a question of fact . . . Only in rare or exceptional cases may the question of proximate cause be decided as a matter of law. . . .  If there may be a fair difference of opinion regarding whose act proximately caused the injury, the question of proximate cause must be submitted to [the fact finder].").

Conclusion

The plaintiff claims that he purchased contaminated fuel from the defendant on May 28, 2004.  The plaintiff has met its burden of showing a genuine issue of material fact.  It appears that the Veeder Root System records and records from manual testing of the defendant's fuel tanks for contamination on May 28, 2004, are missing.  The defendant claims that the plaintiff's fuel was not contaminated, or that the plaintiff failed to tighten his fuel caps thereby contaminating the fuel, or that any contamination came from the act of a third party.  However, none of these theories appear certain.  In addition, the plaintiff's testimony and expert opinions show that contaminated fuel may have caused the Squid Row's engine to fail.  These genuine issues of material fact preclude summary judgment for the defendant.  Therefore, the defendant's motion for summary judgment is denied.

**AND IT IS SO ORDERED.**

*C. Weston Houck*

**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

July 9, 2007
Charleston, South Carolina